# Exhibit 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in compliance with D.N.J. LBR 9004-2(c)**

**FOX ROTHSCHILD LLP**
(Formed in the Commonwealth of Pennsylvania)
Michael J. Viscount, Jr., Esquire
Joshua T. Klein, Esquire
John H. Strock, Esquire
Marie C. Dooley, Esquire
1301 Atlantic Avenue, Suite 400
Atlantic City, NJ 08401
(609) 348-4515/fax (609) 348-6834
mviscount@foxrothschild.com
jklein@foxrothschild.com
jstrock@foxrothschild.com
mdooley@foxrothschild.com

*Proposed Counsel to the Debtor and*
*Debtor in Possession*

In re:

GASPARI NUTRITION, INC.,

Debtor.[1]

Chapter 11

Case No. 14-

## INTERIM ORDER AUTHORIZING DEBTOR TO
## USE CASH COLLATERAL AND OBTAIN SECURED CREDIT FROM AND
## PROVIDING ADEQUATE PROTECTION TO CRESTMARK BANK

**The relief set forth on pages two (2) through fifteen (15) is hereby ORDERED.**

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is: Gaspari Nutrition, Inc. (5842). The location of the Debtor's corporate headquarters is 575 Prospect Street, Suite 230, Lakewood, NJ 08701.

Debtor: Gaspari Nutrition, Inc.
Case No. 14-
Caption of Order:  INTERIM ORDER AUTHORIZING DEBTOR TO OBTAIN SECURED CREDIT FROM AND
PROVIDING ADEQUATE PROTECTION TO CRESTMARK BANK

The Debtor, Gaspari Nutrition, Inc. a New Jersey corporation (the "Debtor"), having contacted Crestmark Bank (the "Bank") regarding an immediate need of funding and to use cash collateral to continue operations during its Chapter 11 bankruptcy proceeding; the Bank having agreed to provide the necessary funding and the use of its cash collateral upon the conditions set forth below; and the Debtor and the Bank having stipulated and agreed as follows:

A. On October 14, 2014 (the "Petition Date"), Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Code"). Since that time, Debtor has remained in possession of its assets and has continued to operate and manage its business as a debtor in possession pursuant to Sections 1107 and 1108 of the Code.

B. Debtor filed a Motion to obtain secured credit from and to provide adequate protection to the Bank (the "Motion").

C. Bank previously entered into financing arrangements with Debtor and Guarantors (as hereinafter defined) pursuant to, among others, the following documents (collectively, the "Pre-Petition Loan Documents"):

1. Promissory Note dated February 7, 2014, in the stated principal amount of $7,500,000.00, as amended by the Amended and Restated Promissory Note dated June 27, 2014 in the stated principal amount of $7,500,000.00 (the "Note");

2. A Loan and Security Agreement and Schedule each dated February 11, 2014, as amended by Amendment No. 1 to Schedule to Loan and Security Agreement dated as of June 29, 2014, the Amendment No. 2 to Schedule to Loan and Security Agreement dated as of July 9, 2014, and letter agreements dated as of July 25, September 8 and September 16, 2014 (collectively the "Loan Agreement");

3. The Personal Guaranty dated as of February of 2014 (the "Guaranty") of Richard S. Gaspari (the "Guarantor"); and

4. A UCC-1 Financing Statement recorded on April 12, 2014 with the New Jersey Secretary of State, Filing Number 50722033.

D. Bank is holding $2,518,144.37 as collateral (the "Held Cash"), which are the proceeds of a securities account pledged by Guarantor in favor of Bank. The Held Cash is not property of the estate.

E. All capitalized terms not defined herein shall have the meaning given to such terms in the Pre-Petition Loan Documents.

Case 14-30963-CMG    Doc 3-1    Filed 10/14/14    Entered 10/14/14 15:11:58    Desc
Exhibit 1 - Proposed Order w/exhibits    Page 4 of 26

Page 3 of 15
Debtor: Gaspari Nutrition, Inc.
Case No. 14-
Caption of Order: INTERIM ORDER AUTHORIZING DEBTOR TO OBTAIN SECURED CREDIT FROM AND
PROVIDING ADEQUATE PROTECTION TO CRESTMARK BANK

F.    As of October 13, 2014, the Debtor was indebted to the Bank in the approximate amount of $3,522,422 plus fees and costs allowed under the Pre-Petition Loan Documents (the "Pre-Petition Indebtedness").

G.    The Pre-Petition Indebtedness constitutes the valid and binding obligations of Debtor and Guarantor to Bank and is secured by the liens and security interests in all personal property of Debtor existing as of the Petition Date (the "Pre-Petition Collateral").

H.    Bank's liens and security interests in the Pre-Petition Collateral are valid and properly perfected and are unavoidable and indefeasible in this bankruptcy case or otherwise.

I.    The Bank's liens and security interests are prior to any other interests in the Pre-Petition Collateral.

J.    Debtor asserts that the value of the Pre-Petition Collateral as of the Petition Date is at least equal to the amount of the Pre-Petition Indebtedness and, therefore, the Bank is fully secured.

K.    The Pre-Petition Loan Documents provide for the Bank's dominion of funds and the Debtor has no rights in or authority to use the cash receipts generated in its business operations absent an order of the Court or the agreement of Bank.

L.    To continue the operation of its business during the Chapter 11 reorganization process until it can conduct a sale of its assets, Debtor represents that it must use cash collateral and obtain secured post-petition financing from the Bank to pay post-petition obligations incurred by Debtor in the ordinary course of its business.

M.    The Debtor desires that the Bank continue its existing line of credit under the terms of the Pre-Petition Loan Documents as modified herein, to enable the Debtor to continue to operate pursuant to the terms and conditions described in this Order.

N.    The Debtor urgently requires financing under Section 364 of the Bankruptcy Code to fund daily operations.  The Debtor's inability to fund daily operations could result in a long-term negative impact on the value of the business of the Debtor to the prejudice and detriment of the Debtor and its creditors, customers and employees.

O.    The Debtor represents that it is presently unable to obtain, in the ordinary course of business or otherwise, unsecured credit allowable under Section 503(b)(1) of the Code as an administrative expense, unsecured credit allowable under Section 364(a) or (b) of the Code or secured credit under Section 364(c) of the Code, other than credit from the Bank as provided in this Order pursuant to Section 364(d) of the Code.

P.    Good cause has been shown for entry of this Order.  Among other things, the entry of this Order will minimize disruption of Debtor's business as a going concern and will

Debtor: Gaspari Nutrition, Inc.
Case No. 14-
Caption of Order: INTERIM ORDER AUTHORIZING DEBTOR TO OBTAIN SECURED CREDIT FROM AND
PROVIDING ADEQUATE PROTECTION TO CRESTMARK BANK

increase the possibility of a successful sale or rehabilitation, and, therefore, is in the best interest of Debtor, the estate, and its creditors.

Q.     The terms of this Order and the financing contemplated herein have been negotiated at arms-length with all parties represented by experienced counsel, are fair and reasonable under the circumstances, are for reasonably equivalent value and fair consideration, and are in good faith as that term is used in §364(e) of the Code. Accordingly, Bank in making advances pursuant to this Order is entitled to the protection subscribed in §364(e) of the Code.

R.     This Order is an interim order and the Debtor will provide notice of this Order to the U.S. Trustee's office, all creditors holding secured claims of record who have an interest in the cash collateral of the Debtor, and to the unsecured creditor's committee (if there is one) (the "Committee") and its counsel (if counsel has been retained), or to the creditors holding the 20 largest unsecured claims (according to the list filed by Debtor pursuant to Bankruptcy Rule 1007(d)), and such notice shall constitute sufficient "notice and a hearing," without the need for notification of any further entities under Section 102 of the Code and Bankruptcy Rules 2002 and 4001.

S.     This Order is entered in a "core" proceeding within the meaning of 28 U.S.C. § 157.

**NOW, THEREFORE, IT IS HEREBY ORDERED that:**

1.     The Motion be, and hereby is, granted on an interim basis to the extent set forth below.

**SECTION 1: PRE-PETITION LOAN DOCUMENTS**

1.1     Subject to the rights of the Committee or any party in interest as set forth in paragraph 3.15, the Pre-Petition Indebtedness constitutes valid and binding obligations of Debtor and Guarantor to Bank, which is secured by all Pre-Petition Collateral, which liens and security interests are valid and properly perfected. Such liens shall continue pursuant to Section 552(b) of the Code.

1.2.     Debtor and Guarantor shall not allege or pursue against Bank any defenses, affirmative defenses, counterclaims, claims, causes of action, set-offs, or other rights, whether known or unknown, that Debtor or Guarantor may have or had at any time up to and including the date of entry of this Order, to contest the authenticity, validity, or enforceability of the Pre-Petition Loan Documents, the security interests, or other liens of Bank, or any other matter connected with the Bank's collateral or the existence and payment of the Pre-Petition Indebtedness, subject to the rights of the Committee or any party in interest as set forth in paragraph 3.15.

Debtor: Gaspari Nutrition, Inc.
Case No. 14-
Caption of Order:  INTERIM ORDER AUTHORIZING DEBTOR TO OBTAIN SECURED CREDIT FROM AND
PROVIDING ADEQUATE PROTECTION TO CRESTMARK BANK

1.3    Subject to the rights of the Committee or any party in interest as set forth in paragraph 3.15, the Bank, and its officers, directors, employees, attorneys, stockholders, agents successors and assigns, are hereby released, by Debtor and Guarantor in every capacity, and by their respective employees, officers, directors, attorneys, stockholders, agents, successors, assigns, or heirs, from all liabilities, claims, causes of action, allegations, or assertions, known or unknown, that they may have or had at any time up to and including the date of entry of this Order, with respect to Bank's actions or omissions with respect to Debtor and Guarantor or to any relationship between Bank and Debtor and Guarantor.  As an example and not limitation, the foregoing release includes any claims for breach of an alleged obligation of good faith by Bank or any other claim or cause of action commonly referred to under the rubric of "lender liability."

1.4    The obligations of Guarantor under the Guaranty shall continue.

1.5    Subject to the rights of the Committee or any party in interest as set forth in paragraph 3.15, the Pre-Petition Loan Documents are incorporated herein by reference and shall be construed and considered as post-petition agreements between Debtor and Bank under this Order (except to the extent inconsistent herewith or modified hereby).  The Bank shall continue to have dominion over all funds and the Debtor has no rights in or authority to use cash collateral and receipts generated in its business operations except as provided in this Order.

1.6    Debtor is hereby authorized to use cash collateral and to borrow money and seek other financial accommodations from Bank and is ordered to perform its obligations hereunder in accordance with the terms hereof.  All loans and obligations incurred on or after the Petition Date by Debtor to Bank pursuant to this Order, and the amount advanced by Bank under the Interim Order if it becomes a final order, are referred to as the "DIP Indebtedness" and, together with the Pre-Petition Indebtedness, as the "Indebtedness".  All loans advanced hereunder and under the Interim Order if it becomes a final order will be deemed to be additional loans under the Pre-Petition Loan Documents, subject to the rights and priorities provided herein, and will be advanced by Bank to Debtor and be guaranteed by the Guarantor, as provided in the Pre-Petition Loan Documents.  Upon entry of this Interim Order the Debtor shall be deemed to have unconditionally promised to pay on a secured post-petition basis and the Guarantor shall be deemed to have unconditionally guaranteed all DIP Indebtedness so that the Debtor and the Guarantor shall be jointly and severally liable therefore.  Bank shall not be required to provide any financing to Debtor unless and until Guarantor ratifies and reaffirms the Guaranty in favor the Bank by executing the Amended and Restated Schedule A (hereinafter defined).

**SECTION 2:  LOAN AUTHORIZATIONS**

2.1    Debtor is hereby authorized to use cash collateral and to borrow from the Bank pursuant to the terms and conditions of the Pre-Petition Loan Documents as modified herein and by the Amended and Restated Schedule A attached hereto as Exhibit A (the "Amended and Restated Schedule A") during the term of this Order for the payment of expenses set forth on the Budget attached hereto as Exhibit B (the "DIP Budget").  The DIP Budget includes line items for

Page 6 of 15
Debtor: Gaspari Nutrition, Inc.
Case No. 14-
Caption of Order:  INTERIM ORDER AUTHORIZING DEBTOR TO OBTAIN SECURED CREDIT FROM AND
PROVIDING ADEQUATE PROTECTION TO CRESTMARK BANK

operating expenses and reorganization fees.  Cash collateral and borrowings used by the Debtor under this Order shall be referred to herein as the "Funding."

2.2.    All proceeds and collections of the Pre-Petition Collateral and the DIP Collateral (as hereinafter defined), including the proceeds and collections of the receivables pledged to Bank under this Interim Order, must be forwarded to the Blocked Account at Bank.  Bank is hereby authorized to notify all Account Debtors to make all payments to the Blocked Account, to make collection calls and to institute collection action if necessary.

The proceeds of each Account (including those with respect to the Interim Order) that Bank collects will be applied as follows:

(a)    first, to Bank in an amount equal to the Advance on that Account whether occurring prior to or after the Petition Date;

(b)    then to Bank in an amount equal to the maintenance fee for that Account;

(c)    then to Bank in an amount equal to the interest earned on the Advance at the interest rate set forth herein;

(d)    then to Bank to pay any expenses Borrower owes to Bank (subject only to a final, non-appealable Order that the expenses incurred and paid were unreasonable).  The Bank will provide the Debtor, the United States Trustee and a Committee if one is appointed, copies of all its legal invoices and a breakdown of the other Bank Expenses (as defined below);

(e)    last, unless Bank elects to withhold all or part of the funds in a reserve for repayment of questionable Accounts or unless there is a default hereunder, to Borrower.

2.3.    Provided that the Debtor complies with the requirements of Pre-Petition Loan Documents, including the requirements of sections 2 and 3 of the Loan Agreement, and that the Indebtedness does not exceed the Advance Formula, the Bank shall make Advances to the Debtor to fund the Budget.  Notwithstanding anything contained herein to the contrary, Bank shall not be required to fund and the Debtor may not use any Collateral to pay for any items and amounts not included in the Budget.

2.4    Bank has the right to charge interest at a rate equal to eleven percent (11%) per annum in excess of the Wall Street Journal Prime Rate.  As an accommodation to the Debtor, the Indebtedness (including the amounts advanced prior to and under the Interim Order and thereafter if the Interim Order becomes a Final Order) shall bear interest at a rate equal to five percent (5.00%) per annum in excess of the Prime Rate but not less than eight and one quarter percent (8.25%) per annum.  The Indebtedness, including all accrued but unpaid interest, is payable on demand.  As incurred, Bank shall be entitled to recover all of its reasonable out of pocket expenses ("Bank Expenses"), including reasonable consultants, attorneys and paralegal

Debtor: Gaspari Nutrition, Inc.
Case No. 14-
Caption of Order:  INTERIM ORDER AUTHORIZING DEBTOR TO OBTAIN SECURED CREDIT FROM AND
PROVIDING ADEQUATE PROTECTION TO CRESTMARK BANK

fees, costs and expenses, incurred in connection with the Indebtedness, subject only to a final, non-appealable Order that the fees and expenses incurred and paid were unreasonable.  The Bank will provide the Debtor, the United States Trustee and a Committee if one is appointed, copies of all its legal invoices and a breakdown of the other Bank Expenses.  All other terms and conditions of the Pre-Petition Loan Document shall remain effective.

2.5    Bank has agreed to increase the current Advance Formula under Paragraph 2 of the Loan Agreement in accordance with the Amended and Restated Schedule attached hereto as Exhibit A, including increasing the Advance Rate on domestic and foreign receivable and new inventory, and providing an over formula advance.  The Maximum Amount under the Loan Agreement shall be Six Million Dollars ($6,000,000.00).

### SECTION 3:  ADEQUATE PROTECTION

3.1    To secure the DIP Indebtedness (which includes that amount advanced under the Interim Order if it becomes a final order), and as adequate protection for and to protect the Bank against any diminution in the value of the Pre-Petition Collateral, except as provided in the last sentence of this clause 3.1, the Bank is hereby granted, pursuant to Section 364(c)(2) and 364(c)(3) of the Bankruptcy Code, a first lien on the Debtor's personal property of any kind and nature whatsoever, whether now owned or hereafter acquired by Debtor, and all proceeds, rents or profits thereof, including all of the Pre-Petition Collateral and any unused or unearned retainers, deposits, or prepaid items (collectively, the "DIP Collateral"), subject to any validly existing lien on personal property of the Debtor other than Accounts.  Any pre-petition security interest or lien on the Pre-Petition Collateral which is avoided or otherwise preserved for the benefit of Debtor's estate under Section 551 or any other provisions of the Bankruptcy Code shall be subordinate to the security interests in favor of Bank on the DIP Collateral. **Notwithstanding anything contained herein to the contrary, this Order does not afford Bank a security interest in any Chapter 5 causes of action.**

3.2    All liens and security interests in the DIP Collateral granted to Bank by this Order are deemed duly perfected and recorded under all applicable laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order or act shall be required to effect or continue such perfection, although Bank may, in its sole discretion, and at Debtor's expense, make any filings or recordations or other acts it deems appropriate with respect to such perfection.

3.3    In consideration of the Funding, Debtor hereby irrevocably waives and is barred from asserting or exercising any right, without (a) Bank's prior written consent, or (b) prior payment and satisfaction in full of the Indebtedness, to (i) grant or impose, under Section 364 of the Bankruptcy Code or otherwise, senior or equal liens on or security interests in any DIP Collateral; or (ii) modify or affect any of the rights of Bank under this Order.

3.4    The DIP Indebtedness shall have the highest administrative priority under Section 364(c)(1) of the Bankruptcy Code, and shall have priority over all other costs and

Case 14-30963-CMG    Doc 3-1    Filed 10/14/14    Entered 10/14/14 15:11:58    Desc
Exhibit 1 - Proposed Order w/exhibits    Page 9 of 26

Page 8 of 15
Debtor: Gaspari Nutrition, Inc.
Case No. 14-
Caption of Order: INTERIM ORDER AUTHORIZING DEBTOR TO OBTAIN SECURED CREDIT FROM AND
PROVIDING ADEQUATE PROTECTION TO CRESTMARK BANK

expenses of administration, including those specified in, or ordered pursuant to, Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) or 726 or any other provision of the Bankruptcy Code or otherwise (whether incurred in this case, any conversion of this case pursuant to Section 1112 of the Bankruptcy Code, or in any other proceedings related hereto or thereto). **Notwithstanding anything contained herein to the contrary, the provisions of this paragraph do not afford Bank a security interest in any Chapter 5 causes of action**.

Nothing in this Order constitutes Bank's consent to a Section 506(c) surcharge.

**Notwithstanding the foregoing, Bank's liens on and security interests in the DIP Collateral and Bank's administrative claims under Section 364(c)(1) of the Bankruptcy Code shall be subject to the payment of any unpaid fees payable pursuant to 28 U.S.C. §1930, any unpaid fees payable to the Clerk of this Court or the United States Trustee.**

3.5     Through the Final Hearing (hereinafter defined), and thereafter if this Order becomes a Final Order, all collections and proceeds of any Pre-Petition or DIP Collateral and all other cash or cash equivalents which shall at any time on or after the Petition Date come into the possession or control of Debtor, or to which Debtor shall become entitled to at any time ("Post-Petition Collections") shall be deposited or forwarded into the Blocked Account with Bank and shall be applied to the Indebtedness as provided for in this Order. All banks in which any lockboxes and blocked accounts of Debtor exist are authorized and directed to comply with any request of Bank to turn over to Bank all funds therein, or collected after the Petition Date, without offset or deduction of any kind.

3.6     The Indebtedness to Bank shall be paid simultaneous with any sale of the Pre-Petition Collateral or the DIP Collateral from the proceeds of such sale.

3.7     Debtor shall permit Bank and any authorized representatives designated by Bank, including auditors and appraisers engaged by Bank, reasonable access to visit and inspect any of the properties of Debtor during normal business hours and reasonable notice, to review Debtor's financial and accounting records, and to make copies and take extracts therefrom, and to discuss Debtor's affairs, finances and business with Debtor's officers, consultants, and accountants. Without limiting the generality of the foregoing, Debtor shall promptly provide to Bank and its designated representatives any information or data reasonably requested to monitor Debtor's compliance with the provisions of this Order and to perform audits, appraisals or other valuation analyses of any personal property of Debtor.

3.8     Except as Bank may consent, the terms of this Order shall not be modified by any order (including any confirmation order) or by any plan of reorganization in this case or any subsequent case under the Bankruptcy Code.

3.9     All of Bank's rights are expressly reserved if no Final Order is entered. Except as otherwise specifically provided herein, Bank does not waive any rights it has pursuant to the Pre-Petition Loan Documents and Bank shall retain all rights available pursuant to the Bankruptcy

Debtor: Gaspari Nutrition, Inc.
Case No. 14-
Caption of Order:  INTERIM ORDER AUTHORIZING DEBTOR TO OBTAIN SECURED CREDIT FROM AND
PROVIDING ADEQUATE PROTECTION TO CRESTMARK BANK

Code or any other applicable law.  The Bank has no commitment to provide funding beyond (i)
the Bank's demand for repayment; (ii) the occurrence of an event of default; or (iii) the
Termination Date (as hereinafter defined), provided that the Debtor retains the right to seek to
use cash collateral without the consent of the Bank pursuant to an order of this Court.

3.10    The rights and obligations of Debtor and the rights, claims, liens, security
interests and priorities of Bank arising under this Order are in addition to, and are not intended as
a waiver or substitution for, the rights, obligations, claims, liens, security interests and priorities
granted by Debtor, as pre-petition debtor, under the Pre-Petition Loan Documents.

3.11    The provisions of this Order shall be binding upon and inure to the benefit of
Bank, Debtor and their respective successors and assigns, including any trustees of Debtor in
Chapter 11 or Chapter 7.

3.12    If this case is dismissed, Bank's rights and remedies under this Order shall remain
in full force and effect.

3.13    Debtor hereby waives any and all defenses (including, without limitation, offsets
and counterclaims of any nature and kind) as to the validity, perfection, priority, enforceability
and non-avoidability (under Sections 510, 544, 545, 547, 548, 550, 552, 553 of the Bankruptcy
Code or otherwise) of the Pre-Petition Indebtedness and the security interests in and liens on the
Pre-Petition Collateral in favor of Bank (which liens and security interests are first priority
subject only to the liens granted herein).  The agreements set forth in this paragraph shall be
deemed effective upon the date this Order becomes a final order, subject only to the Committee's
(and other's rights if there is no Committee) right to object on the terms and conditions set forth
in Paragraph 3.15 below.

3.14    This Court has considered and determined the matters addressed herein pursuant
to its powers under the Bankruptcy Code, including the power to authorize Debtor to obtain
credit on the terms and conditions upon which Debtor and the Bank have agreed.  Thus, each of
such terms and conditions constitutes a part of the authorization under Section 364 of the
Bankruptcy Code, and is, therefore, subject to the protections contained in Section 364(e) of the
Bankruptcy Code except as otherwise provided herein.

3.15    This Order is set for further hearing (the "Final Hearing") before this Court at
_____ .m. EST on _____, 2014 (the "Final Hearing Date"), at which time any
party in interest may present any timely filed Claim Objection.  Pending the final hearing, Debtor
may borrow up to $_____, which is the amount necessary to avoid immediate
and irreparable harm under Bankruptcy Rule 4001(c)(2).  Bank shall have no obligations
hereunder beyond the Final Hearing Date unless this Order becomes a Final Order.  Debtor shall
serve a copy of this Order, by regular mail by no later than _____, 2014 upon the U.S.
Trustee's office, all creditors holding secured claims of record who have an interest in the cash
collateral of the Debtor, the Committee (if there is one) and its counsel (if counsel has been
retained) and the creditors holding the 20 largest unsecured claims (according to the list filed by

Debtor: Gaspari Nutrition, Inc.
Case No. 14-
Caption of Order:  INTERIM ORDER AUTHORIZING DEBTOR TO OBTAIN SECURED CREDIT FROM AND
PROVIDING ADEQUATE PROTECTION TO CRESTMARK BANK

Debtor pursuant to Bankruptcy Rule 1007(d)).  The notice of entry of this Order and the Final
Hearing shall state that Claim Objections shall be in writing and shall be filed with the United
States Bankruptcy Clerk for the District of New Jersey by _____, 2014, which
objections shall be served so that the same are received on or before _____ _.m. EST on
_____, 2014 by (i) Michael Viscount, Counsel for Debtor, Fox Rothschild LLP,
1301 Atlantic Avenue, Midtown Building, Suite 400, Atlantic City, NJ 08401-7212,
mviscount@foxrothschild.com; and (ii) Thomas E. Coughlin, Esq., Counsel for Bank, Jaffe,
Raitt, Heuer & Weiss, P.C., 27777 Franklin Road, Suite 2500, Southfield, MI 48034,
tcoughlin@jaffelaw.com.

        Notwithstanding the previous paragraph, the Committee has a minimum of 60 days (or
such longer period as the Committee may obtain for cause shown before the expiration of such
period) from the date of entry of the order approving the appointment of the Committee's
counsel or the final financing order, whichever is later, to investigate and bring as representative
of the estate any appropriate proceedings a challenge to the Stipulations set forth herein; or if no
Committee is appointed, any party in interest has a minimum of 75 days (or a longer period for
cause shown before the expiration of such period) from the date of entry of the final financing
order to investigate the Stipulations and file a motion seeking authority to bring as representative
of the estate any appropriate proceedings.

        The Court may unwind the pay down of the pre-petition debt authorized in paragraph 2.2
above in the event there is a timely and successful challenge to the validity, enforceability,
extent, perfection, priority, or amount of the pre-petition Bank's claims or liens, or a
determination that the pre-petition debt was undersecured as of the Petition Date.

        3.16    Debtor shall not, without Bank's prior written consent, seek to modify this Order.
Notwithstanding anything contained herein, if any provision of this Order is hereafter modified,
at the Final Hearing or otherwise, by final order of this or any other court, such modifications
shall not affect the validity of any DIP Indebtedness outstanding or any right authorized hereby
with respect to any such DIP Indebtedness.  Without limiting the foregoing, if the Final Order is
not entered in accordance with paragraph 3.15, the Debtor shall nonetheless be required to repay
any DIP Indebtedness on demand.

        3.17    The Debtor, at its expense, shall (a) continue to keep all collateral insured to its
maximum insurable value against all loss, peril and hazard and name Bank as lender's loss
payable under such policies; and (b) pay any and all post-petition taxes, assessment and
governmental charges, except to the extent such are being contested in good faith by appropriate
proceedings and Debtor maintains appropriate cash reserves for the expenses being contested,
and provide Bank with proof of the foregoing within 3 days of payment.  Copies of all federal
tax returns, federal tax deposits and other payments made by Debtor during the pendency of this
Order shall be timely mailed to Bank.

Debtor: Gaspari Nutrition, Inc.
Case No. 14-
Caption of Order:  INTERIM ORDER AUTHORIZING DEBTOR TO OBTAIN SECURED CREDIT FROM AND
PROVIDING ADEQUATE PROTECTION TO CRESTMARK BANK

### SECTION 4:  COVENANTS AND REPORTING REQUIREMENTS

4.1    The Debtor shall comply with all covenants and maintain all formulas contained in the Pre-Petition Loan Documents.

4.2    The Debtor will promptly give the Bank prior written notice of the occurrence of any event or any matter which has resulted or will result in a material adverse change in its business, assets, operations or financial condition.

4.3.    Debtor shall deliver to the Bank concurrently with their filing, copies of each report filed with the Office of the United States Trustee if not also filed with the court.

### SECTION 5: DEFAULT, RIGHTS AND REMEDIES OF THE BANK AND SERVICE

5.1    Each of the following events shall constitute an event of default (an "Event of Default") hereunder:

    (a)    An order dismissing the case, converting the case to Chapter 7, appointing an examiner with expanded powers or a trustee, or terminating the authority of the Debtor to conduct business;

    (b)    Failure of Debtor to make any payment when due;

    (c)    There is a default (other than payments) by the Debtor under this Order or the loan documents; or

    (d)    The Debtor fails to make a payment then due and owing after demand by the Bank.

5.2    Upon the Termination Date (as hereinafter defined):

    (a)    The entire Indebtedness remaining unpaid at the election of the Bank and without notice shall become due; and

    (b)    The Debtor's authority to use cash collateral shall cease upon three business days' notice, and the Bank may file a motion for relief from the automatic stay upon five business days' notice, and the Debtor may file a motion for authority to use cash collateral which the Court will hear on an expedited basis.

"Termination Date" shall mean the earlier of (i) the sale by the Debtor of all or a material portion of the DIP Collateral (which includes the Pre-Petition Collateral) other than inventory sales in the ordinary course of business, (ii) an Event of Default or (iii) December 14, 2014.  The Debtor and the Bank may agree to extend the Termination Date without further order of the Court, provided, the Bank shall have no obligation to do so.

Debtor: Gaspari Nutrition, Inc.
Case No. 14-
Caption of Order: INTERIM ORDER AUTHORIZING DEBTOR TO OBTAIN SECURED CREDIT FROM AND
PROVIDING ADEQUATE PROTECTION TO CRESTMARK BANK

     5.3     The Bank shall have no obligation to advance any funds to the Debtor unless and until:

        (a)     The Debtor has executed such additional loan documents as the Bank may reasonably request; and

        (b)     The Debtor has complied with all the terms and conditions of the Pre-Petition Loan Documents.

## SECTION 6: OTHER RIGHTS, OBLIGATIONS AND PROVISIONS

     6.1     Debtor is authorized and directed to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements that Bank may reasonably require and/or which may otherwise be deemed necessary by Bank to effectuate the terms and conditions of this Order, including, without limitation, such documents as the Bank may deem necessary to correct defects in title and like matters.

     6.2     No delay or failure to exercise any right, power or remedy accruing to Bank upon breach or default by Debtor under this Order or any document or agreement shall impair any such right, power or remedy of Bank nor shall it be construed to be a waiver of any such breach or default, nor of any breach or default theretofore or thereafter occurring, nor an acquiescence therein.

     6.3     Consent to this Order may be given by counterparts and/or facsimile signatures.

Approvals and Acknowledgements relating to the Order Authorizing Debtor to Obtain Secured Credit from and Providing Adequate Protection to Crestmark Bank:

*(Remainder of page intentionally left blank)*

Page 13 of 15
Debtor: Gaspari Nutrition, Inc.
Case No. 14-
Caption of Order: INTERIM ORDER AUTHORIZING DEBTOR TO OBTAIN SECURED CREDIT FROM AND
PROVIDING ADEQUATE PROTECTION TO CRESTMARK BANK

**APPROVED AS TO FORM AND SUBSTANCE:**

JAFFE, RAITT, HEUER & WEISS                         FOX ROTHSCHILD LLP
Professional Corporation

/s/     Thomas E. Coughlin                          /s/     Michael Viscount
Thomas E. Coughlin (MI P40561)                      Michael Viscount
Attorneys for Crestmark TPG LLC                     Attorney for the Debtor
27777 Franklin Road, Suite 2500                     1301 Atlantic Avenue
Southfield, MI 48034                                Midtown Building, Suite 400
(248) 351-3000                                      Atlantic City, NJ 08401-7212
                                                    (609) 572-2227

Dated: October 14, 2014                             Dated: October 14, 2014

Page 14 of 15
Debtor: Gaspari Nutrition, Inc.
Case No. 14-
Caption of Order:  INTERIM ORDER AUTHORIZING DEBTOR TO OBTAIN SECURED CREDIT FROM AND
PROVIDING ADEQUATE PROTECTION TO CRESTMARK BANK

## EXHIBIT A

Amended and Restated Schedule A to the Loan Agreement

**AMENDED AND RESTATED SCHEDULE TO LOAN AND SECURITY AGREEMENT**
DATED: October _____, 2014

This Schedule is part of the February 11, 2014 Loan and Security Agreement (the "Agreement") between:

CRESTMARK BANK ("CRESTMARK")
5480 CORPORATE DRIVE
SUITE 350
TROY, MICHIGAN 48098

AND

GASPARI NUTRITION INC. ("BORROWER")
575 PROSPECT ST., STE 230
LAKEWOOD TOWNSHIP, NJ  08701

The following paragraph numbers correspond to paragraph numbers contained in the Agreement.

This Schedule replaces and super cedes in their entirety the Schedule dated as of February 11, 2014, the Amendment No. 1 dated June 27, 2014 and the Amendment No. 2 dated July 9, 2014, and is made an Exhibit to the Interim Financing Order of the United States Bankruptcy Court (the "Court") with jurisdiction over the Chapter 11 Bankruptcy Case of the Borrower (the "Bankruptcy Case").

## 2.    LOAN;LOAN ADVANCES.

Advance Formula: Advances of the Loan may be measured against a percentage of Eligible Accounts, Eligible Inventory and Marketable Securities

The Loan Amount may not exceed an amount which is the lesser of:

(a)    Six Million Dollars ($6,000,000.00) ("Maximum Amount"); or

(b)    the sum of:

(i)    Eighty-five percent (85%) of domestic and foreign Post-Petition Eligible Accounts; PLUS

(ii)    Seventy-five percent (75%) of domestic Pre-Petition Date Eligible Accounts plus fifty percent (50%) of foreign Pre-Petition Date Eligible Accounts; Plus

(iii)    the lesser of (x) Nine Hundred Thousand Dollars ($900,000.00), or (y) forty percent (40%) of Pre-Petition Eligible Raw Material Inventory not to exceed Three Hundred Sixty Thousand Dollars ($360,000.00) at any time, plus fifty-eight percent (58%) of Pre-Petition Eligible Finished Good Inventory not to exceed Five Hundred Forty Thousand Dollars ($540,000.00) at any time; PLUS

(iv)    up to one hundred percent (100%) of the dollar amount of Eligible Post-Petition Inventory Purchase Orders pursuant to a Crestmark approved budget; PLUS

(v)    One Million Eight Hundred Thousand Dollars ($1,800,000.00) consisting of a portion of the total cash held by Crestmark from the liquidation of certain marketable securities previously pledged to Crestmark by Richard Gaspari.

(subparagraphs (i) – (v) are collectively the "Advance Formula").

"Eligible Accounts" means and includes those Accounts:

(i)    which have been validly assigned to Crestmark;

(ii)   strictly comply with all of Borrower's promises, warranties and representations to Crestmark;

(iii)  contain payment terms of not greater than ninety (90) days from the date of invoice; and

(iv)   are not past due more than ninety (90) days past the date of invoice;

(v)    are invoiced not later than ten (10) days from the date of service or sale; and

(vi)   are domiciled outside of the United States or Canada, but which are covered Accounts under the Debtor's pre-existing credit insurance contract.

Eligible Accounts shall not include the following:

(a)    Accounts with respect to which the Account Debtor is an officer, employee or agent of Borrower;

(b)    Accounts with respect to which services or goods are placed on consignment, guaranteed sale, or other terms by reason of which the payment by the Account Debtor may be conditional;

(c)    Except as provided for in paragraph 2(b)(ii), above, and in sub-part (vi) under the definition of Eligible Accounts herein above, Accounts with respect to which the Account Debtor is not a resident of the United States or Canada; provided, however, all Accounts originating from the Province of Quebec shall be deemed ineligible;

(d)    Accounts with respect to which the Account Debtor is the United States or any department, agency or instrumentality of the United States; provided, however, that Borrower has completed all of the steps necessary, in the sole opinion of Crestmark, to comply with the Federal Assignment of Claims Act of 1940 (31 U.S.C. Section 3727) with respect to such Account;

(e)    Accounts with respect to which the Account Debtor is any state of the United States or any city, town, municipality, county or division thereof;

(f)    Accounts with respect to which the Account Debtor is a subsidiary of, related to, affiliated with, or has common shareholders, officers or directors with Borrower;

(g)    Accounts with respect to which Borrower is or becomes liable to the Account Debtor for goods sold or services rendered by the Account Debtor to Borrower, except to the extent that the Account Debtor has agreed in writing that the Account Debtor will not offset the balance due by the Borrower;

2

(h)     those Accounts where Crestmark has notified Borrower that, in Crestmark's sole discretion, the Account or Account Debtor is not acceptable to Crestmark;

(i)     all of the Accounts owed by an Account Debtor who is the subject of a bankruptcy, receivership or similar proceeding;

(j)     all of the Accounts owed by an Account Debtor where twenty (20%) percent or more of all of the Accounts owed by that Account Debtor are more than ninety (90) days from the invoice date;

(k)     Accounts for which the services have not yet been rendered to the Account Debtor or the goods sold have not yet been delivered to the Account Debtor (commonly referred to as "pre-billed accounts");

(l)     COD, credit card sales and cash sales; and

(m)    Accounts are disputed.

"Eligible Inventory" means and includes that Inventory (other than packaging materials, chemicals, additives, promotional items, labels and supplies) which Crestmark, in its sole credit judgment, deems to be Eligible Inventory.  Without limiting the generality of the forgoing, no Inventory shall be Eligible Inventory unless:

(i)      it is finished goods or raw materials;

(ii)     at all times it strictly complies with all of Borrower's promises, warranties and representations to Crestmark;

(iii)    it is in good, new and salable condition;

(iv)    it is not slow moving, obsolete or unmerchantable, in Crestmark's sole and absolute discretion;

(v)     it meets all standards imposed by any governmental agency or authority or any insurer;

(vi)    it is at all times subject to Crestmark's duly perfected, first priority security interest and there exists no other lien or encumbrance other than as permitted hereunder; and

(vii)   it is in Borrower's possession and control situated at a location in compliance with this Agreement.

Eligible Inventory shall not include Inventory that:

(a)     is in the hands of any third party, including a warehouseman, finisher, consignee, etc., unless Crestmark shall have received a warehouseman's waiver or a third party processor's waiver from such warehouseman, finisher, consignee, etc.;

(b)     is subject to any license or other agreement that limits, conditions, or restricts Borrower's or Crestmark's right to sell or otherwise dispose of such Inventory;

(c)     is not of a type that Crestmark, in its commercially reasonable discretion, has determined is not Eligible Inventory; or

(d)     is not in Borrower's possession based upon consignment, guaranteed sale, or other terms by reason of which the payment by Borrower may be conditional.

"Eligible Post-Petition Inventory Purchase Order" means a Post-Petition purchase order from the Borrower to a supplier for Eligible Inventory evidenced by the Borrower purchase order, the

corresponding supplier invoice, and for purchases to full an existing order for a customer of the Borrower a copy of the corresponding customer purchase order to the Borrower.

Crestmark will determine in its sole discretion whether any Collateral is eligible for an Advance, but no Collateral will be considered eligible unless the requirements set forth above are met. Regardless of whether any Collateral is eligible, it is still part of the Collateral securing the Obligations.

Prior to any request for an Advance Borrower must furnish to Crestmark invoices, credit memos, purchase orders, evidence of delivery, proof of shipment, timesheets or any other documents Crestmark requests, in its sole discretion, with respect to the Accounts that Borrower is tendering to Crestmark to support the Advance ("Account Documents"). Crestmark will endeavor to provide the requested Advance by the end of the day on the date it receives the request as long as the complete package of information for the request has been received by Crestmark by 10:30 a.m. Eastern Time on the date of the request for the Advance. All requests for funding will be subject to Crestmark's then standard fees for electronic funds transfer, wire transfers and check services.

Each time an Advance is made, the amount of the Obligations will be increased by the amount of the Advance. On the later of three (3) business days ("Clearance Days") after checks, ACH or wire transfers or other credit instruments are applied to a specific invoice, Crestmark will credit the Loan Account with the net amount actually received, whereupon interest and Maintenance Fee will no longer be charged. On the date a collection is applied to a specific invoice Borrower will receive immediate credit on such funds in determining availability for Advances.

When Crestmark receives a payment from an Account Debtor, it will attempt to apply it against the appropriate Account Debtor and invoice according to the Account Debtor's remittance advice. If it is not clear which Account Debtor or invoice the payment is to be applied against, Crestmark may contact Borrower or the payor for assistance. Unless there is clear error, the application of payments by Crestmark is final.

4.      **FEES AND EXPENSES**.  The following fees will be paid by Borrower:

**Loan Fee:**  Upon entry of the Order Authorizing Debtor to Obtain Secured Credit From and Providing Adequate Protection to Crestmark Bank (the "Order"), Borrower will pay Crestmark a loan fee in the aggregate amount of one percent (1.0%) of the Maximum Amount, which will be fully earned as of such date and not refundable in any event, but will be due and payable on the Termination Date (as defined in the Order).

**Late Reporting Fee:**  Borrower will pay Crestmark a Late Reporting Fee in an amount equal to One Hundred Fifty ($150.00) Dollars per document per business day for any day in which any report, financial statement or schedule required by the Agreement is delivered late.

**Lockbox Fee:**  Each month Borrower will pay all costs in connection with the Lockbox and the Lockbox Account, as determined by Crestmark from time to time.

4

**Maintenance Fee:** Borrower will pay Crestmark a monthly Maintenance Fee of thirty five one hundredths of one percent (0.35%) of the monthly average outstanding principal balance of the Loan for the preceding month.

**Exit Fee:** Borrower may elect to prepay the Obligations but only upon the payment of all Obligations including the following exit fee ("Exit Fee"), as liquidated damages and not as a penalty: prior to the one year anniversary date of the Agreement, the exit fee will be one (1.00%) percent of the Maximum Amount plus Loan Fees and Maintenance Fees due or to become due under the Agreement. After the one year anniversary date of the Order, the Exit Fee will be the Loan Fees and Maintenance Fees due or to become due under the Agreement. No partial prepayment will affect the Borrower's obligation to continue the regular payments due under the Note. In the event that a Default has occurred and is continuing at the time Crestmark demands payment of the Obligations, the Exit Fee will be due and payable by Borrower.

## 5.  LOCKBOX.

The Lockbox Account means:

> Drawer #1934
> PO Box 5935
> Troy, MI 48007-5935

## 10.  REPRESENTATIONS.

**(A)**   Borrower is a New Jersey corporation or limited liability company.

**(C)**   List pending and threatened litigation and unsatisfied judgments: Case names, complaint number and jurisdiction to be provided by Borrower

- o   Thermolife International LLC v. Gaspari Nutrition, Inc. Case No: 3:13-cf-00881-JLS-MDD.  Southern District of California
- o   Bruce Kneller v. Gaspari Nutrition and Richard Gaspari Case No: 18-166-000009-13.  Monmouth County, New Jersey

**(F)**   List Security Interests in the Collateral held by creditors other than Crestmark as Permitted Encumbrances: None

**(J)**   List Borrower's Trade names: None

## 11.  BORROWER'S PROMISES:

C.   BORROWER CLAIMS THRESHOLD:   $20,000.00.

E.   FINANCIAL COVENANTS:

At no time shall Borrower make any loans, advances, intercompany transfers or cash flow between Borrower and any subsidiary, related entity or affiliate of Borrower or with any company that has common shareholders, officers or directors with Borrower.

All of the financial covenants in this Agreement shall be determined in accordance with GAAP, unless otherwise provided.

"GAAP" means generally accepted accounting principles set forth in the opinions and pronouncements of the Accounting Principles Board of the American Institute of Certified Public Accountants and statements and pronouncements of the Financial Accounting Standards Board that are applicable to the circumstances as of the date of determination and applied on a consistent basis.

12.    C.    OBLIGATION THRESHOLD: $20,000.00.

13.    **FINANCIAL REPORTS**.

**Management Prepared Financial Statements**:    Borrower will deliver to Crestmark monthly management prepared financial statements, balance sheets, and profit and loss statements for the month then ended, certified to by the president or chief financial officer of Borrower. Such reports will set forth the financial affairs and true condition of Borrower for such time period and will be delivered to Crestmark no later than thirty (30) days after the end of each month.

**Projections:**    Borrower shall deliver to Crestmark, within sixty (60) days prior to each year-end, an annual financial projection including balance sheet, income statements, and statement of cash flows together with assumptions for the following year, broken down monthly.

**Guarantors' Personal Financial Statements**.    Upon the request of Crestmark, Guarantors will provide Crestmark with annual personal financial statements on forms supplied by Crestmark. Such reports will set forth with detail Guarantors' financial affairs and the true financial condition of Guarantors, as of the end of each calendar year and shall be delivered to Crestmark on the earlier of April 30th or 120 days after the end of each calendar year.

**Annual Financial Statements:**    Each year Borrower will deliver to Crestmark annual reviewed financial statements, cash flow statements, balance sheets, and profit and loss statements prepared by a certified public accountant acceptable to Crestmark, all without exceptions. Such reports will set forth in detail Borrower's true condition as of the end of Borrower's fiscal year no later than one hundred twenty (120) days after the end of Borrower's fiscal years.

**Accounts Receivable, Accounts Payable Aging and Inventory Reports**:    Borrower will furnish to Crestmark the following certified to by the president or chief financial officer of Borrower within the time periods set forth:

(a)    **Accounts Receivable Reports**:    Daily detailed Accounts Receivable Aging Reports, and copies of all invoices.

2892268.3

(b) **Accounts Payable Reports**: Monthly detailed Accounts Payable Aging Reports no later than fifteen (15) days after the end of each month.

(c) **Inventory Reports:** Daily perpetual Inventory reports.

(d) **Borrowing Base Certificate:** With each Advance request but not less than weekly, borrowing base certificates together with all such documentation as required by Crestmark, including but not limited to each purchase order, vendor invoice and bill of lading which corresponds to a Debtor's purchase of Post-Petition Date Inventory.

(e) **Cash Flow Budget and Weekly Updates:** Weekly updates to the cash flow budget prepared by the Debtor's chief restructuring officer and weekly progress reports from Heritage Equity Partners concerning the sale of the Collateral.

**Tax Returns:** Upon the request of Crestmark, Guarantor and Borrower will each provide Crestmark with current annual tax returns prior to April 15 of each year or if an extension is filed, at the earlier of (a) filing, or (b) the extension deadline.

**Field Examinations**: Borrower will reimburse Crestmark for the costs to perform four (4) field examinations per year of Borrower's books and records, assets and liabilities, to be performed by Crestmark's inspector, whether a Crestmark officer or an independent party with all expenses, (whether for a Crestmark employee or otherwise), including all out of pocket expenses including, but not limited to, transportation, hotel, parking, and meals paid by Borrower. Upon Default, the number of field examinations to be reimbursed by Borrower may be increased in Crestmark's sole discretion. Field examinations are performed for Crestmark's internal use and Crestmark has no obligation to provide Borrower or Guarantor with the results of the examination or copies of any reports or work papers in whole or in part.

**Tax Deposit Evidence**: WAIVED

**Customer Lists**: Upon Crestmark's request, Borrower will deliver to Crestmark detailed customer lists showing the customer's name, address, phone number and any other information Crestmark reasonably requests.

**Other Information**: Borrower and Guarantor will also deliver to Crestmark such other financial statements, financial reports, documentation, tax returns and other information as Crestmark requests from time to time.

18. **NOTICES.** Addresses for Notices are as set forth at the beginning of this Schedule. Copies of each Notice shall be simultaneously provided to Michael Viscount, Esq. at mviscount@foxrothschild.com, if directed to the Borrower, to Thomas Coughlin, Esq. at tcoughlin@jaffelaw.com, if directed to Crestmark, and to Arthur Abramowitz, Esq. at aabramowitz@shermansilverstein.com, if directed to the Guarantor.

2892268.3

19.    **DIP BUDGET.**    Crestmark agrees that variances of less than 10% of any line item of the DIP Budget shall not be an Event of Default provided that total expenditures do not exceed the weekly amounts provided for in the DIP Budget.

**GASPARI NUTRITION INC.**

By:_____
       Marc Ross
Its:   CRO

**CRESTMARK BANK**

By:_____
       Steve Menoian
Its:   Vice President


The undersigned does hereby consent and agree to the foregoing, does hereby ratify and reaffirm his Guaranty of the Indebtedness, does hereby agree that such Guaranty shall remain in full force and effect in accordance with their terms, does hereby consent to the entry of the Financing Order of the Bankruptcy Court of which this is a part, and does hereby agree that this Schedule and such Order shall not in any way affect his liability under the Guaranty.

GUARANTOR ACKNOWLEDGES AND AGREES THAT HE HAS FULLY READ AND COMPLETELY UNDERSTANDS THIS SCHEDULE AND THE FINANCING ORDER OF THE BANKRUPTCY COUT OF WHICH THIS IS A PART, AND HE VOLUNTARILY ENTERS INTO AND EXECUTES THIS DOCUMENT, AND FURTHER ACKNOWLEDGES THAT HE HAS BEEN REPRESENTED AND ADVISED OR WAS GIVEN THE OPPORTUNITY TO BE SO REPRESENTED AND ADVISED BY COUNSEL OF HIS CHOOSING WITH RESPECT TO HIS EXECUTION OF THIS DOCUMENT.


_____
Richard S. Gaspari
Date:  October __, 2014

Debtor:  Gaspari Nutrition, Inc.
Case No. 14-
Caption of Order:  INTERIM ORDER AUTHORIZING DEBTOR TO OBTAIN SECURED CREDIT FROM AND
PROVIDING ADEQUATE PROTECTION TO CRESTMARK BANK

## **EXHIBIT B**

### DIP Budget

Gaspari Nutrition, Inc.
DIP Budget

| | 09/19/14 | 09/26/14 | 10/03/14 | 10/17/14 | 10/24/14 | 10/31/14 | 11/07/14 | 11/14/14 | 11/21/14 | 11/28/14 | 12/05/14 | 12/12/14 | 12/19/14 | 12/26/14 | Wks 1-11 Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | | | |
| **Beginning Cash** | 191,809 | | | | | | | | | | | | | | 5,000,000 |
| Sales | | | | | | | | | | | | | | | 2,095,710 |
| DIP Financing | | | | | | | | | | | | | | | |
| DIP Paydown | | | | | | | | | | | | | | | (5,570) |
| Gross Receipts Gross Receipts Existing | | | | | | | | | | | | | | | 1,300,000 |
| Gross Receipts - Future Sales | | | | | | | | | | | | | | | 3,190,000 |
| Est. Discounts | | | | | | | | | | | | | | | (336,750) |
| Net Receipts | | | | | | | | | | | | | | | 4,153,250 |
| **Total Cash Available** | | | | | | | | | | | | | | | 6,243,390 |
| Purchases | | | | | | | | | | | | | | | 3,500,000 |
| Prepaid Runs | | | | | | | | | | | | | | | 500,000 |
| Payroll and Benefits | | | | | | | | | | | | | | | 442,107 |
| Selling, General and Administrative | | | | | | | | | | | | | | | 720,158 |
| **Total Operating Expenses** | | | | | | | | | | | | | | | 5,562,265 |
| **Reorganization Fees** | | | | | | | | | | | | | | | |
| Debtor Counsel | | | | | | | | | | | | | | | 135,000 |
| Investment Banking Fees | | | | | | | | | | | | | | | 250,000 |
| Loan Origination and Term Fees | | | | | | | | | | | | | | | 120,000 |
| Other Professional Fees | | | | | | | | | | | | | | | 10,000 |
| Creditor Professionals | | | | | | | | | | | | | | | 56,250 |
| UST Fees | | | | | | | | | | | | | | | 17,875 |
| CRO | | | | | | | | | | | | | | | 92,000 |
| **Total Reorganization Fees** | | | | | | | | | | | | | | | 681,125 |
| **Net Cash Flows** | | | | | | | | | | | | | | | (2,090,140) |
| **Ending Cash** | | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) |
| **Collateral:** | | | | | | | | | | | | | | | |
| Accounts Receivable | | | | | | | | | | | | | | | |
| Est. Beginning Balance | 1,300,000 | | | | | | | | | | | | | | 3,259,628 |
| Sales | | | | | | | | | | | | | | | |
| Gross Receipts | | | | | | | | | | | | | | | (4,153,250) |
| Other | | | | | | | | | | | | | | | (336,750) |
| Ending Balance | | | | | | | | | | | | | | | 3,769,628 |
| Inventory | | | | | | | | | | | | | | | |
| Beginning Balance | 1,906,290 | | | | | | | | | | | | | | 5,489,808 |
| Additions | | | | | | | | | | | | | | | 3,500,000 |
| Build for post sale pipeline - constant | | | | | | | | | | | | | | | 900,000 |
| Ending Balance | | | | | | | | | | | | | | | 6,307,308 |
| **Loan Balance** | 4,125,000 | | | | | | | | | | | | | | 5,740,140 |
| **Balancing Equation** | | | | | | | | | | | | | | | |
| Cash In/Available | | | | | | | | | | | | | | | 5,740,140 |
| Cash Out | | | | | | | | | | | | | | | |
| DIP Draws | | | | | | | | | | | | | | | |
| DIP Paydown | | | | | | | | | | | | | | | 5,570 |

**Gaspari - CRESTMARK DIP BUDGET**

| | 10/17/14 | 10/24/14 | 10/31/14 | 11/07/14 | 11/14/14 | 11/21/14 | 11/28/14 | 12/05/14 | 12/12/14 | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Projected | | | | | |
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | |
| **Accounts Receivable** | | | | | | | | | | |
| Beginning Balance | 1,300,000 | 1,525,000 | 1,500,000 | 1,390,000 | 1,459,000 | 1,784,000 | 2,003,000 | 2,108,000 | 2,083,050 | 1,300,000 |
| Sales | 225,000 | 250,000 | 250,000 | 600,000 | 750,000 | 750,000 | 750,000 | 750,000 | 750,000 | 5,225,000 |
| Pre-Petition Collections | (75,000) | (179,375) | (311,750) | (211,250) | (118,125) | (61,250) | (51,625) | (44,825) | | (975,200) |
| Post-Petition Collections | | (75,000) | (160,000) | (280,000) | (275,000) | (430,000) | (546,000) | (675,000) | (750,000) | (3,190,000) |
| Credits/Discounts | (20,625) | (20,625) | (38,250) | (39,750) | (31,875) | (39,750) | (48,375) | (58,125) | (60,000) | (336,750) |
| Ending Balance | 1,525,000 | 1,500,000 | 1,390,000 | 1,459,000 | 1,784,000 | 2,003,000 | 2,108,000 | 2,083,050 | 2,023,050 | 2,023,050 |
| **Inventory** | | | | | | | | | | |
| Beginning Balance | 2,000,000 | 2,002,500 | 2,313,000 | 2,435,500 | 2,519,250 | 2,508,000 | 2,496,750 | 2,485,500 | 2,474,250 | 2,000,000 |
| Additions | 10,000 | 175,000 | 280,000 | 420,000 | 525,000 | 525,000 | 525,000 | 525,000 | 525,000 | 3,510,000 |
| Build for post sale pipeline | 150,000 | 350,000 | 200,000 | 200,000 | - | - | - | - | - | 900,000 |
| COGS | (157,500) | (214,500) | (357,500) | (536,250) | (536,250) | (536,250) | (536,250) | (536,250) | (536,250) | (3,947,000) |
| Ending Balance | 2,002,500 | 2,313,000 | 2,435,500 | 2,519,250 | 2,508,000 | 2,496,750 | 2,485,500 | 2,474,250 | 2,463,000 | 2,463,000 |
| **Loan Balance** | | | | | | | | | | |
| Beginning Balance | 3,650,000 | 4,000,865 | 4,425,047 | 4,647,547 | 4,928,197 | 5,257,947 | 5,483,097 | 5,605,847 | 5,601,140 | 3,650,000 |
| Advance Rate | 85% | 85% | 85% | 85% | 85% | 85% | 85% | 85% | 85% | 85% |
| Plus: A/R Advances | 191,250 | 240,625 | 394,250 | 577,950 | 696,875 | 720,400 | 740,375 | 763,118 | 774,000 | 5,098,793 |
| Plus: 100% of Inventory Purchases | 160,000 | 525,000 | 480,000 | 620,000 | 525,000 | 525,000 | 525,000 | 525,000 | 525,000 | 4,410,000 |
| Less: Unneeded Availability | (385) | (87,068) | (180,000) | (426,000) | (499,000) | (529,000) | (546,000) | (576,000) | (410,000) | (3,253,453) |
| Less: A/R Collections | | (254,375) | (471,750) | (491,250) | (393,125) | (491,250) | (596,625) | (716,825) | (750,000) | (4,165,200) |
| Ending Loan Balance | 4,000,865 | 4,425,047 | 4,647,547 | 4,928,197 | 5,257,947 | 5,483,097 | 5,605,847 | 5,601,140 | 5,740,140 | 5,740,140 |
| **Cash Flow Summary** | | | | | | | | | | |
| Total Cash Inflow | 350,865 | 678,557 | 694,250 | 771,900 | 722,875 | 716,400 | 719,375 | 712,118 | 889,000 | 6,255,340 |
| **Operating Expenses** | | | | | | | | | | |
| Purchases | 10,000 | 175,000 | 280,000 | 420,000 | 525,000 | 525,000 | 525,000 | 525,000 | 525,000 | 3,510,000 |
| Pre-paid Buys | 150,000 | 350,000 | 200,000 | 200,000 | - | - | - | - | - | 900,000 |
| Payroll and Benefits | 72,656 | | 72,656 | | 97,656 | | 72,656 | | 126,484 | 442,808 |
| Selling, General and Administrative | 25,459 | 89,310 | 77,550 | 87,447 | 31,221 | 121,949 | 57,171 | 117,305 | 112,745 | 720,157 |
| Total Operating Expenses | 258,115 | 614,310 | 630,206 | 707,447 | 653,877 | 646,949 | 654,827 | 642,305 | 764,229 | 5,572,265 |
| **Reorganization Fees** | | | | | | | | | | |
| Debtor Counsel | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 135,000 |
| Investment Banking Fees | | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 250,000 |
| Loan Origination and Term Fees | 60,000 | | | | | | | | 60,000 | 120,000 |
| Other Professional Fees | | | | | 5,000 | | | 5,000 | | 10,000 |
| Creditor Professionals | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 56,250 |
| UST Fees | | | | | 4,875 | | | | 13,000 | 17,875 |
| CRO | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 92,000 |
| Total Reorganization Fees | 92,750 | 64,000 | 64,000 | 64,000 | 68,875 | 69,000 | 64,000 | 69,000 | 125,500 | 681,125 |
| **Net Cash Flows** | - | 247 | 44 | 453 | 123 | 451 | 548 | 813 | (729) | 1,950 |
| **Collateral Summary** | | | | | | | | | | |
| Available A/R (85%) | 1,296,250 | 1,275,000 | 1,181,500 | 1,240,150 | 1,516,400 | 1,702,550 | 1,791,800 | 1,770,593 | 1,719,593 | 1,719,593 |
| Available Inventory (40%) | 1,001,250 | 925,200 | 974,200 | 1,007,700 | 1,003,200 | 998,700 | 994,200 | 989,700 | 985,200 | 985,200 |
| Marketable Securities | 2,500,000 | 2,500,000 | 2,500,000 | 2,500,000 | 2,500,000 | 2,500,000 | 2,500,000 | 2,500,000 | 2,500,000 | 2,500,000 |
| Loan Balance | 4,000,865 | 4,425,047 | 4,647,547 | 4,928,197 | 5,257,947 | 5,483,097 | 5,605,847 | 5,601,140 | 5,740,140 | 5,740,140 |
| Net Availability (OOF) | 796,635 | 275,153 | 8,153 | (180,347) | (238,347) | (281,847) | (319,847) | (340,847) | (535,347) | (535,347) |